UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 19-cr-00250-PB |
| v. ) | |
| ) | |
| CRYSTAL HARDY ET AL. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING CODEFENDANT STATEMENTS**

The United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, responds as follows to the Defendant's Motion *in limine* regarding Codefendant Statements (ECF No. 67). The Government agrees not to introduce the oral statements by Mr. Kelly that Defendant seeks to exclude in its motion, with only four exceptions. The Government seeks to introduce only select information from each of the following four of Mr. Kelly's statements that are identified in Defendant's motion, and will address each in turn:

- Statement c.:   Ms. Hardy was planning to sell the guns located in the vehicle because she was with Mr. Kelly and no longer needed guns for protection.

- Statement d.: Mr. Kelly had 1.5 grams of "dope" in the vehicle but did not know anything about the money found in the car.

- Statement g.: Methamphetamine has been "hard to get recently."

- Statement h.: Mr. Kelly and Ms. Hardy were getting their methamphetamine from Jared Stottlar.

Because the Court's ruling on this issue affects whether the parties may seek to move for a severed trial, the Government respectfully requests a ruling on Defendant's motion and the issues raised below prior to trial.

1. **Mr. Kelly's Statement that Ms. Hardy Was Planning to Sell the Guns Located in the Vehicle Because She Was Receiving Protection from Mr. Kelly**

The Government acknowledges that Mr. Kelly's statement that Ms. Hardy was planning to sell the guns located in the vehicle pins the gun ownership plainly onto Ms. Hardy. Though Ms. Hardy is not legally prohibited from owning a gun, or charged with a gun crime, the Government does not intend to elicit this part of Mr. Kelly's statement.

Instead, the Government intends to elicit only the information in the statement that Mr. Kelly believed that Ms. Hardy did not need her own guns, because she had him for protection. The Government would seek to introduce this evidence to show Mr. Kelly's state of mind: that he believed that he was protecting Ms. Hardy. The statement is not facially inculpatory to Ms. Hardy, or to Mr. Kelly; it is only inculpatory to Mr. Kelly in combination with other evidence in the record, and the government's theory of the case that his role in the conspiracy was providing protection to Ms. Hardy. Admission of such a statement does not violate *Bruton*. *See Brown* v. *Maloney*, 267 F.3d 36, 42 (1st Cir. 2001) (upholding Massachusetts Supreme Judicial Court's opinion finding codefendant's statement admissible against other codefendant, reasoning that "[a] codefendant's statement which becomes incriminating 'only when linked with evidence introduced later at trial,' [] generally does not offend the Sixth Amendment, so long as an adequate limiting instruction is given); *U.S.* v. *Celestin*, 612 F.3d 14, 20 (1st Cir. 2010) (confrontation clause not violated by admission of codefendant's confession in conspiracy case, because it did not reference defendant nor implicate defendant).

Here, the Government can easily and effectively elicit only the above-described information, and not Mr. Kelly's statements about Ms. Hardy's gun ownership, by asking a

direct question of its witness, DEA Agent Galen Doud, about what Mr. Kelly said regarding the his belief that he provided protection to Ms. Hardy.

2. **Mr. Kelly's Statement that "Dope" Found in the Vehicle Belonged to Mr. Kelly, But Did Not Know Anything about Money Found in the Vehicle**

The Government acknowledges that Mr. Kelly's statement that he did not know anything about money found in the car shifts responsibility for the money onto Ms. Hardy. The Government does not intend to elicit this part of Mr. Kelly's statement.

Instead, the Government intends to elicit only the information in the statement that Mr. Kelly possessed 1.5 grams of "dope" in the vehicle. This statement is not inculpatory to Ms. Hardy in any sense contemplated by *Bruton*. Indeed, it is not facially inculpatory as to any count of the indictment. It is instead being offered by the Government to show Mr. Kelly's knowledge of the items of drug distribution found in the same bag in which his fentanyl was found.

As with the first statement, the Government can easily and effectively elicit only the above-described information, and not Mr. Kelly's statements about the money in the car, by asking a direct question of its witness, DEA Agent Galen Doud, about what Mr. Kelly said regarding the fentanyl in the vehicle.

3. **Mr. Kelly's Statement that Methamphetamine Has Been "Hard to Get Recently"**

Defendant does not assert that this statement poses a *Bruton* problem, and it does not. Defendant instead only asserts that it is irrelevant because it occurs outside the timeframe of the charged conspiracy. It is relevant to the crimes charged because it shows Defendant Kelly's knowledge of the methamphetamine market, and supports that he has been looking to buy

methamphetamine.   His statement was made on July 26, 2020, and the term "recently" is vague enough to encompass the latter part of the charged conspiracy.   Even if the Court finds the statement to regard events postdating the time of the conspiracy, the statement may still be admitted:   "Evidence of a conspirator's post conspiracy activity is admissible if probative of the existence of a conspiracy or the participation of an alleged conspirator, 'even though they might have occurred after the conspiracy ended.'" *United States v. Fields,* 871 F.2d 188, 197 (1st Cir.1989) (quoting *Anderson v. United States,* 417 U.S. 211, 219 (1974)).

### 4. Mr. Kelly's Statement that He and Ms. Hardy Were Getting Methamphetamine from Jared Stottlar

The Government acknowledges that Mr. Kelly's statement that he and Ms. Hardy were getting methamphetamine from Jared Stottlar directly inculpates Ms. Hardy, and is subject to *Bruton*.   The Government does not intend to elicit that Mr. Kelly said Ms. Hardy was buying methamphetamine from Mr. Stottlar.

Instead, the Government seeks only to elicit the information that Mr. Kelly admitted he was buying methamphetamine from Mr. Stottlar.   As with the first statement, the Government can easily and effectively elicit only this information, and not Mr. Kelly's statements about Ms. Hardy, by asking a direct question of its witness, DEA Agent Galen Doud, about what Mr. Kelly said about where he (not Ms. Hardy) gets methamphetamine.   Because this is not a written statement, it will not implicate an issue such as that raised by *Gray v. Maryland,* 523 U.S. 185, 188, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) holding that the *Bruton* issue was not resolved where defendant's name has been replaced by a blank space or redaction symbol.   Here, DEA Agent Galen Doud would not mention Ms. Hardy's name at all.

For all of the above reasons, the Government respectfully requests that the above statements, as modified, be admitted.

Dated: February 25, 2021

Respectfully submitted,

SCOTT W. MURRAY
United States Attorney

By:   /s/ Aaron G. Gingrande
Aaron G. Gingrande
Debra M. Walsh
Assistant U.S. Attorneys
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552